IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALEX SCHENDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 7123 |
| | ) | |
| | ) | |
| BEST BUY STORES, L.P. and | ) | |
| TIMOTHY MCGEEHAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss Count II of the amended complaint. For the reasons stated below, we grant the motion to dismiss.

**BACKGROUND**

Plaintiff Alex Schendell ("Schendell") alleges that he began working for Defendant Best Buy Stores, L.P. ("Best Buy") in April 1998 and that in April 2004 he was promoted from a Retail Strategy Director position to Vice President of Regional Sales. When Schendell was promoted he allegedly signed a document entitled "Offer Confirmation," which included information regarding his salary and

1

the date of his performance review. Schendell also claims that in September 2005 he was promoted to the position of Territory General Manager. According to Schendell, on February 1, 2006, Best Buy terminated his employment and refused to pay him severance pay or bonus payments for the end of 2005.

Schendell also claims that after Best Buy terminated his employment, Defendant Timothy McGeehan ("McGeehan"), an Executive Vice President of Best Buy, hosted a conference call ("Conference Call") with several Best Buy directors and managers. McGeehan allegedly stated the following during the Conference Call:

> I cannot tell you the specific reasons I terminated Alex's employment, but at Best Buy we have a value system and polices related to that value system and there is a zero tolerance. If your value system isn't intact you can't work here. If my values were bad, I would expect Brian Dunn to fire me.

(A. Compl. Par. 22). Schendell brought the instant action in Illinois state court and the action was subsequently removed to federal court. Schendell then filed an amended complaint which includes an Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115 *et seq.*, claim against Best Buy (Count I), and defamation *per se* claims against Best Buy and McGeehan (Count II). Defendants now move to dismiss the defamation *per se* claims in Count II of the amended complaint.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley,* 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail . . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School,* 144 F.3d 448, 454-55 (7th Cir. 1998) ; *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir. 1992). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a "cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and

3

can plead conclusions. *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002); *Kyle,* 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Kyle,* 144 F.3d at 455, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins,* 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan,* 40 F.3d at 251; *Nance v. Vieregge,* 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

Defendants argue that the facts alleged in the amended complaint are not sufficient to establish a defamation *per se* claim. Under Illinois law, a defamatory statement is defined as "a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Solaia Tech., LLC v. Specialty Publ'g. Co.*, 852 N.E.2d 825, 839 (Ill. 2006). Under Illinois law, a statement can be defamation *per se* if the statement includes: "(1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person

4

has engaged in adultery or fornication." *Id.*

Schendell alleges in the amended complaint that during the Conference Call, McGeehan spoke as a representative of Best Buy. Schendell contends that McGeehan intended to convey through his alleged statements that Schendell did not have proper "values" in performing his job. (A. Compl. Par. 22). Schendell thus contends that the statements made by McGeehan involved "words that impute [that Schendell] is unable to perform or lacks integrity in performing . . . his employment duties." *Solaia*, 852 N.E.2d at 839. Schendell also contends that the statements contained "words that impute [Schendell] lacks ability or otherwise prejudices [him] in . . . his profession." *Id.* Defendants argue that the allegations in the amended complaint are not sufficient under the innocent construction rule to support a defamation *per se* claim. Defendants also contend that the alleged statements made by McGeehan are protectable, non-actionable expressions of opinion.

I. Innocent Construction Rule

Defendants argue that the statements allegedly made by McGeehan are not actionable in light of the innocent construction rule. Under the innocent construction rule, "'[a] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*.'" *Muzikowski v. Paramount Pictures Corp.*, 2007 WL 416983, at *5 (7th Cir.

5

2007)(quoting *Tuite v. Corbitt*, 2006 WL 3742112 (Ill. 2006)). In assessing the meaning of statements alleged to be defamatory, "'statements reasonably capable of an innocent construction should be interpreted as nondefamatory,'" but "'the innocent construction rule does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable.'" *Id.* (quoting *Tuite*, 2006 WL 3742112).

In the instant action, McGeehan asserted that Best Buy has "a value system and polices related to that value system. . . ." (A. Compl. Par. 22). Schendell argues that the "value system" referred to by McGeehan clearly referred to a system that required a quality work performance. Schendell argues that McGeehan, by insinuating that Schendell did not live up to that "value system," also insinuated that Schendell's work performance was sub par and that Schendell is not able to competently or ethically perform the tasks associated with his position. In drawing such inferences, however, Schendell seeks to view the statements made by McGeehan in accordance with the limited construction of the statements in support of Schendell's case.

The "value system" mentioned by McGeehan is not described in any other statements referenced in the amended complaint. It is not clear what the management at Best Buy values the most in its employees and the meaning of the "value system" referred to by McGeehan is open to a variety of constructions. The only reasonable inference that can be drawn from the alleged statements are that Schendell's continued employment was inconsistent with the value system prized

and promoted by Best Buy. The alleged statements suggesting that Schendell failed to fit in with Best Buy's value system do not include facts concerning Schendell's general employment abilities. Nor do the alleged statements directly indicate that Schendell was unable to perform the tasks associated with his job or that Schendell lacks the necessary abilities to perform his job. In addition, the alleged statements do not include specific facts regarding Schendell's integrity or Schendell's possible performance in future positions.

The statements allegedly made by McGeehan could reasonably have meanings other than the one advocated by Schendell. We will provide a few examples of innocent constructions that could reasonably be applied to McGeehan's alleged statements. The context of the statements were allegedly made by McGeehan, a Best Buy Executive Vice President, during a conference call with Best Buy's directors and managers. In such a context, the reference to the Best Buy "value system" could indicate, for example, that Best Buy's value system prizes a manager that uses his or her initiative to make positive changes in the Best Buy organization. If initiative was prized by Best Buy, and Schendell did not fit into the Best Buy value system, that would not mean that Schendell was unable to perform his employment duties or lacked integrity in performing his employment duties. Another example would be if Best Buy's value system prized unity among management personnel, and if Schendell had a personality conflict with other managers or employees at Best Buy he would then not fit into Best Buy's value system. That would not in turn necessarily mean that Schendell was not performing

7

his work duties in a competent and ethical manner. The above are merely hypothetical examples and we are not contending that they were Best Buy's value system or that Schendell did not fit in the examples of the value system. Once again, they are merely examples of innocent constructions that could reasonably be applied to McGeehan's alleged statements.

The two examples provided above are only a few of the many possible innocent constructions that could be reasonably inferred from the statements allegedly made regarding Best Buy's "value system." *See id.* (stating that "'if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail'")(quoting *Muzikowski v. Paramount Pictures Corp.,* 322 F.3d 918, 925 (7th Cir. 2003)).

The above examples are also consistent with the constructions identified by the Court in *Marczak v. Drexal Nat'l Bank*, 542 N.E.2d 787 (Ill. App. Ct. 1989). In *Marczak,* the plaintiff's employment was terminated and the termination report included statements such as that the plaintiff "did not perform to the high standards expected of officers of the" defendant employer and that the plaintiff "had some problems getting along with her supervisors and other officers." *Id.* at 788. The Court in *Marczak* agreed with the trial court that the statements in the termination letter were protected expressions of opinion because the statements could be construed as meaning that the plaintiff did not "fit into [the] organization," and that the defendant employer could not "make use of her services any longer." *Id.* at 790. Similarly, in the instant action, the statements made by McGeehan could be

construed to mean nothing more than that Schendell did not fit into the Best Buy organization and value system. The fact that Schendell did not fit in at Best Buy does not necessarily mean that Schendell would not fit in with other employers.

Thus, although Schendell believes that the statements made by McGeehan were intended to attack Schendell's general abilities and ethics in the performance of his tasks at work, Schendell is not entitled to pursue his defamation *per se* claim where other reasonable and innocent constructions also exist. *See Muzikowski*, 2007 WL 416983, at *5 (stating that "[t]he supreme court has recognized that its version of the innocent construction rule (which applies only to *per se* actions) favors defendants, but it has concluded that 'the tougher standard is warranted because damages are presumed in *per se* actions'")(quoting *Tuite*, 2006 WL 3742112 at *9). Therefore, based on the above, we grant Defendants' motion to dismiss the defamation *per se* claims in Count II.

II. Statement of Opinion

Defendants also argue that, even if Schendell's defamation *per se* claim was not deficient under the innocent construction rule, the alleged statements made by McGeehan could not support a defamation *per se* claim because they are protected non-actionable expressions of opinion. A statement that falls within one of the defamatory *per se* categories and for which there is no reasonable innocent construction,"still may enjoy constitutional protection as an expression of opinion." *Solaia Tech., LLC*, 852 N.E.2d at 839. A statement can be deemed a constitutionally

protected expression of opinion "only if it cannot be reasonably interpreted as stating actual fact." *Id.* at 840. In determining whether a statement is a constitutionally protected expression of opinion the court should consider: (1) "whether the statement has a precise and readily understood meaning," (2) "whether the statement is verifiable," and (3) "whether the statement's literary or social context signals that it has factual content." *Id.* at 839.

In the instant action, McGeehan merely made vague references to Best Buy's "value system." (A. Compl. Par. 22). There is no "precise and readily understood meaning" for the alleged statements by McGeehan. *Id.* Nor is it clear that the statements made by McGeehan are verifiable since McGeehan did not delineate what he believed to be the Best Buy "value system." Other Best Buy employees may perceive a different value system at Best Buy and simply because Schendell did not meet the system perceived by McGeehan does not mean that Schendell failed to meet any generally accepted value system at Best Buy, if one even exists. The statements allegedly made by McGeehan merely indicate that he believes that Best Buy has a "value system," that Schendell did not fit in with that system, and that McGeehan would be expected to be fired himself if he did not fit into that system. There are no facts included in McGeehan's alleged statements that indicate that McGeehan was expressing anything other than his own subjective opinion. Such general statements by McGeehan concerning his opinion of Schendell are not actionable as defamation. *See Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 676 (Ill. Ct. App. 2000) (stating that "[w]hile in one sense all opinions imply facts, the question of whether a

statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law"); *Hopewell v. Vitullo*, 701 N.E.2d 99, 103 (Ill. Ct. App. 1999)(holding that the words "'fired because of incompetence' [were] too vague and general to support an action for defamation as a matter of law"). Thus, even if the statements allegedly made by McGeehan were not subject to an innocent construction as is indicated above, we would grant the motion to dismiss since the statements consist of protected non-actionable expressions of opinion.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss the defamation *per se* claim (Count II).

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 8, 2007